SASS Institute, Inc. v. World Programming Limited After a nearly three-week trial, the jury in this case returned a verdict finding that WPL, World Programming, had committed fraud over an eight-year period in order to obtain access to a SASS educational product which enabled WPL to create a clone of the SASS system software. That SASS system software is one of the world's leading statistical analysis software systems. There is no challenge to the sufficiency of the evidence supporting that fraud verdict, and the verdict found $26.4 million in damages representing lost profits from 27 U.S. customers of SASS who switched to WPL's cloned product called WPS. That verdict was then trebled by the trial court to $79.1 million under the North Carolina UDTPA, Unfair Trade Practice Act. WPL's deceptive scheme, as outlined at trial, revolved around WPL's fraudulent licensing and eight years of persistent use of that educational tool, which is called the SASS Learning Edition, in violation of the terms of the license agreements for that product. The Learning Edition product was shipped to licensees such as WPL in a box that stated, quote, SASS. What more do you expect to get from the breach of copyright claim that you haven't already received from the breach of a licensing agreement? I think, Your Honor, with respect to the copyright claim, were SASS to attain the injunction that it is seeking with respect to continued future sales to U.S. customers, then I believe SASS would have attained all of the relief. So the additional relief that you seek is injunctive relief? That's correct. With the copyright claim above and beyond the breach of the licensing agreement? We are of the view, Your Honor, that SASS is entitled to the additional relief based on the judgment. The additional equitable relief? That's right, the additional equitable relief based on the findings at trial. As far as monetary relief, you're not seeking that? No. Because you already got trouble damages. That's correct. But in order to receive the additional equitable relief, we would have to grant the, we would have to say that the district court abused its discretion or made some basic error of law, one of those two. And injunctive relief in the award of equitable relief certainly has a substantial discretionary component. So although you may take issue as a matter of law with the copyright ruling, whether to grant an injunction is a discretionary act as well. The question I have is the whole area of software copywriting is very murky. And when I look through these arguments on the question of copyrightability, I could construct an argument for either side, frankly. But an injunction wouldn't automatically follow from a holding that there was a breach of copyright. And the Supreme Court has repeatedly made that point, and I guess it was most emphatically made in the 2008 case called eBay versus Merck Exchange, where there was a request for an injunction under the Copyright Act. And the Supreme Court made a very emphatic statement and says, like the Patent Act, the Supreme Court cannot grant injunctive relief on such terms as it may deem reasonable to prevent or restrain infringement of a copyright. But then they go on and say, as in our decision today, this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction follows, automatically follows a determination that a copyright has been infringed. So you've got this statement consistent from the Supreme Court that an infringement of a copyright, even if you write on the law, even if you write on the law as a matter of the equitable considerations, an injunction would not necessarily follow. And I agree with that, Your Honor, and I want to make sure that I'm clear. What SAS is arguing here is that based on the judgment that's already been attained here, breach of contract, fraud and unfair trade practices, that SAS should be entitled, for the reasons that we've stated, under that eBay versus Merck Exchange, should be entitled to an injunction and that the court below erred. Well, I misunderstood. Okay, so I viewed it maybe just a tad bit differently. It seemed to me that at least part of your argument would be that the district court erred in finding that SAS's output formats, which I think is a good argument, weren't protected by copyright. And if we agree with you, then it would need to go back to the district court because the factors that come into play in assessing the availability of injunction would need to be reassessed. I think that's correct, Your Honor. If it's determined that SAS were not entitled to an injunction with respect to what we already have. So I think that's correct, Your Honor, and I think it's very clear in the briefing that, for example, and I think the outputs is the easier part of the case because you can sort of see that with one's own eyes how that works. But what I think, and this goes, Judge Wilkinson, to Your Honor's reference to the eBay case. Here's what I think the eBay case stands for. I think it stands for the following principle, at least in part. Irrespective of what the underlying cause of action is, what you've succeeded on in the trial court, when the time comes to make the determination of your entitlement to an injunction, that is done, according to the eBay case, according to the traditional standards of equity. In other words, we're going to look at the questions of irreparable injury, adequacy, balancing of hardships and public interest. Maybe so, but you already have a $79 million judgment, okay? And the copyright question is close, and it's not clear to me that I could make some emphatic pronouncement that the district court had erred in finding no copyright infringement. I could construct an argument that way, but I don't know that I could go so far as to say that it erred as a matter of law because it seems to me we're coming awfully close to copywriting functionality, and I question whether there's a creative or expressive element. I can construct the other argument, too. But even if I give you the question of, say, all right, there was a copyright infringement, normally in these cases the judgment itself operates with injunctive force. I mean, you've got a $79 million judgment, and in light of that, you know, you can settle the thing contractually in the future. And what troubles me, and I think what troubles the Supreme Court, is we're pushing copyright law and patent law, and the Court's decisions have gone in this direction. We're pushing copyright law and patent law into a position where we're over-copywriting and over-patenting. And over-enjoining and destroying sort of the flexibility in the system. Now, you know, every breach of contract isn't a tort, and every breach of contract, breach of a licensing agreement, isn't copyright infringement. There's a danger in sort of lapping breaches of contract over into questions of tort and copyright. And normally, if you have a money judgment in a defamation case, we don't grant an injunction saying you're enjoined from future acts of defamation. If you have an injunction in a tort case, we don't enjoin you against future acts of, future tort cases. And the money judgment in that case is, the whole point of an injunction is to deter. And the money judgment, in this case, 79 million, acts as a considerable deterrent force of its own, with which the parties have to deal, and WPS has to factor in that judgment into any calculus of risk. But it, what worries me is the idea of injunctions following on these holdings, they do move us into an area closer to prior restraints. And that's dangerous. I understand what Your Honor is saying, and let me say why I think this case is different from the situation Your Honor has identified. And it really goes to one of the eBay factors, which is the adequacy of the remedies. So yes, this is a large damages judgment, that's true. But it's inadequate for really, I think, four reasons. Number one, WPL is a UK company, has virtually no assets in the US. Number two, the UK courts, all the parties concede this, will not provide full faith and credit to the trebled portion of the Protection of Trading Interest Act. Number three, even with respect to the issue of the compensatory damages, WPL can't pay it, it's conceded that it's unprofitable, it has insufficient cash reserves, its total annual revenues are just a small fraction of this. Fourth, WPL contends that all of this judgment will be uncollectible in the UK courts where they are, and in any event that they insist on and intend to resist enforcement in the UK courts. And so we're in a situation now. One of the problems with injunctions and over-patenting and over-copywriting is that you knock competitors out of the market. And a lot of times the most innovative things in software have been done by sometimes relatively small outfits that hit gold and grew. And that's the way innovation happens. But copyright really only protects unfair, does not protect unfair creditors, I mean unfair competitors. And your argument is that information obtained unfairly will be used to their future benefit without any deterrence. Precisely. And I would agree with your point about innovation, Judge Wilkinson, but the finding here is not that this is an innovative product, the finding here is that this is a clone product, and I'd, if possible, like to reserve the balance. Well, but we would have to find he was incorrect on his copyright holder to get to that point. No, because I think the injunction could be grounded in the breach of contract fraud and unfair trade practices. The argument is that there's a basis for it that already exists. I'm sorry. My name is Wayne Dennison. I'm here on behalf of World Programming Limited. I'd like to reserve five minutes of rebuttal on the cross-appeal. Your Honor, Mr. Millen started with the trial that occurred in the U.S. There never should have been a trial in the U.S. This case has already been heard in its most material respects in the highest courts in England and Europe. The same parties, the same licenses, the same contracts, the same conduct was tried in the U.K. in what Judge Flanagan described as a nearly identical lawsuit. The lawsuit was resolved in WPL's favor, in favor of a finding of no breach. That finding is final. It's on the merits, fully comported with all of the dictates of due process. You have identical parties, same claims, and any application of claim preclusion principles and international comity would have prevented this case from being heard in the U.S. from being tried with respect to the purported breach. The purported breach matters very much to the subsequent judgment because the only fraud alleged is that SAS Institute was allegedly fraudulently induced to enter into the contract. Why don't you address the whole point of whether they're entitled to an injunction? Your Honor, you specifically raised the question of what's the appellate standard on this question. And frankly, the standard is, as you said, unless Judge Faber abused his discretion below, there's no reason to set it aside. The argument that SAS has made is that there was some sort of categorical exclusion because there had been no proof of that. And we hear from Judge Faber's decision that there was no such categorical exclusion. Judge Faber appropriately went through each of the injunction factors and weighed some against the entrance of an injunction and some in favor of the entrance of an injunction. So ultimately, Judge Faber, for instance, was concerned about the notion of a double recovery. SAS put on evidence at trial with respect to at least some of its future losses. That evidence resulted in a very significant verdict. Which they can't recover. Well, there is no evidence that they can't recover in the appellate record, Your Honor. There has been some back and forth about whether or not there ought to be a bond. We would have to find that he was erroneous in his finding that there was no copyright violation. Your Honor, I think in order to get to a reversal on the case. We would both have to find that he was erroneous as a matter of law, first of all. And then we would have to, because in his opinion, he talks about the equitable factors. Does he not? Would or would not justify injunctive relief? He does. It's disjunctive, though, right? He would either have to find as a matter, that he erred as a matter of law on the copyright claim and send it back. Or we would have to find that he abused his discretion on the contract, the licensing. Your Honor, I think that's exactly right. He wouldn't have to, he wouldn't have to do both. No. And the point that I raise here is that there's no basis to find an abuse of discretion. It's clear that. Right. We were sticking with it. But he's weighed the equitable factors as to whether an injunction ought to follow. Certainly. From the proceedings in this case. That's what I'm saying. It's an abuse of discretion standard. That's correct. And what troubles me is, normally, when you breach a contract, and you're stuck, I think, with the breach of the licensing agreement here. But normally, if you breach a licensing agreement, we don't say, when you breach a contract, that you're going to be enjoined from breaching the contract again. We leave it at that. We leave that to the parties to decide whether to draw up a new contract. And we leave it to one of the parties to just figure in the prior monetary judgment, the element of risk, if they try to repeat the same behavior. But we don't enjoin breaches of contract with injunctions. And the Supreme Court has said, with respect to breaches of copyright, that we don't enjoin breaches of copyright. And, again, the copyright thing is a close question, which I'm not all that eager to just jump in and decide. If the answer's going to be no injunction anyway. But whether it's breach of contract or defamation or breach of copyright, you don't just follow on by saying, here's an injunction, don't do it again. Because that encroaches too close to the issue of breach of contract. And it veers too closely on a prior restraint from future innovation. It's potentially quite anti-competitive. And it veers too far in the direction of a prior restraint. And those are, you know, three very significant drawbacks to granting equitable relief on top of legal relief, on top of patent infringements. It is a road that is full of minefields and pitfalls to go that way. And I think the Supreme Court has indicated extreme caution about extending patent and copyright law that far. Your Honor, I agree with literally everything you said, except for the first portion that started with, we should be stuck with the breach of license. Quite frankly, SAS Institute is stuck with the judgment that it pursued in England that determined there was no breach. This was exactly the same case. They started the case in the UK, they tried it to completion, they tried it through every level of appeal, and the UK courts definitively ruled no breach. You can't then come back to North Carolina and say, oh, I'd like to try this aspect again. Any application of claim preclusion principles in international comedy, and this court in the Guinness case suggests that you will apply claim preclusion principles to a foreign judgment. First of all, I have a question as to whether you raised this below. And second of all, I'm not sure if you raised this below. Why can't we see the UK action as a very different action? Because it was based exclusively on EU law, and EU law didn't have much to do with this case. This was a question of American copyright law and also with sales into the United States. I thought the earlier action primarily had to deal with sales on the European continent, whereas this action had to deal with WPL sales into the United States, which would have been covered by American copyright law. I don't know, you can persuade me otherwise, but I thought the claim of claim preclusion was weak. Even if you had raised it below, and I'm not sure that you have raised it adequately below, but it seems to me that American law and EU law have a lot to do with this. And I don't think that's what's happening here. And I'm going to start with the preclusion question, with the preservation issue. The Supreme Court has specifically held you don't have to have an incantation of particular words in order to put a court fairly on notice of the substance of an issue for preservation purposes. I don't think there's any fair reading of the summary judgment briefs where WPL wasn't urging the district court that the result in England was preclusive of the claims that were asserted in the North Carolina case. They've also said that it was preclusive of the claims that were asserted in England. They've also said that it was preclusive with respect to certain issues. But there was a chart in that summary judgment paper that compared the claims in the UK to the claims in the U.S. But you know, the concern that I have is that even domestic comedy does recognize that you can't compel, for instance, a domestic court to uphold a foreign interest at the expense of public policy in the foreign state. And here, EU law clearly has a public policy that strikes, that overrides, it's much more protective of the innovator than the patent holder as a policy matter than American copyright law. So it just, it prevents any agreement to restrict a license holder's ability to tinker with software. That's a policy, that's a policy judgment writ large that does not exist here. As evidenced by our, calm down, I'll finish, that recognizes the ability of a copyright holder to go farther than the EU would allow in terms of protecting its interests. Your Honor, the comedy question is a question of whether the judgment in the UK violates some fundamental precept of American public policy. It doesn't. There's nothing that would apply the UK judgment in the U.S. and violate any fundamental precept of American public policy. So the notion of comedy not being able to compel a domestic court to uphold a foreign interest at the expense of the public policy of a foreign state, you disagree with that? Well, the public policy of a foreign state, Your Honor, there was only one set of contracts ever tried. Well, stay with me on the EU public policy point, because that does, the EU has a very different legal policy approach to a number of issues. Employment at will being one of them. Copyright being another. And they tend to be much more protective of the employee and the new entrant than American law with the concept of employment at will, for instance, or copyright law recognizes. So what we're talking about, at least with some part of that foreign judgment, is a determination based on a public policy, which the United States does not share. Your Honor, I think there's a little confusion here with respect to what copyrights we're talking about. SAS in the United States brought an affirmative claim that WPL had violated its U.S. copyrights. But in the UK, the only copyrights at issue are the UK copyright. Pursuant to the Berne Convention, which the United States is signed into, when SAS sells copyrights to a UK company for use in the UK, the UK copyright attaches. Okay. So help me understand then why is it the same claim here, if in fact it's different in that respect? Doesn't that sort of undercut what you said initially? No. The U.S. copyright claim is that we are doing things in the U.S., not with respect to those contracts, but we are making sales in the U.S. of our product that is violative of their U.S. copyright. The issue in the UK was whether or not there was a breach of a UK software license. Whether you try that case in the UK or you try it in North Carolina, what you're fundamentally talking about is a UK software license. And that UK software license is constrained by the very restrictions that you suggested. There are two copyrights here. The U.S. one is, and the issue that Judge Flanagan ruled against them on summary judgment was, that's a U.S. copyright. You're doing things in the U.S. that violate our copyright. The UK copyright existed relative to the licenses that the English court deemed us not to be in breach of. And that case was literally retried in the United States. And if there is no breach, the only fraud here is fraudulent inducement. Every single other element of this judgment falls like a domino if you give the appropriate effect to the UK judgment. SAS didn't just forum shop, they're judgment shopping. This is the same case, the exact same case. And I understand that there is some nuance as to which copyright we're talking about, but the copyright that exists relative to the licenses that were used and purchased in England are pursuant to the Byrne Convention a UK copyright subject to UK limitations. Did you even preserve this issue? Yes, I believe. The argument had always been that this case, that the UK case was dispositive because the issuers were the same. The issues are the same. They try to parse it by suggesting that the law is different. The law, as it applies to the licenses, both parties in the UK, both parties in the U.S., both parties in the United States, including SAS, said the North Carolina... Didn't the two suits deal essentially with different territorial sales? The American suit was primarily focused on WPL sales in the United States in breach of the licensing agreement? There's not a word that says that in either complaint, Your Honor. Well, I'm asking you as a matter of fact. Well, as a matter of fact, we thought that every claim that SAS had to sit had been resolved in the UK. And then they come back and say, you know, we'd like to deal with our... Not our sales, but I want to deal with our U.S. damages separate than damages in the rest of the world, because the UK court says you're not getting damages in the rest of the world because there's never been a breach. The fundamental issue here is there were not two separate cases. The case that was tried in North Carolina is the same case that had already been resolved. And it deals with exactly the same law. The same law is a law that says when you sell into the UK, you're subject to the UK copyright. And the limitation... One of the things I'll maybe ask your opposing counsel to... Judge Flanagan and Judge Faber made the basic decision to approach this case as a breach of licensing agreement case, and not a copyright case. And to put the contractual arrangement between SAS and WPL and the licensing agreement front and center. Most copyright cases, or a great many copyright cases, don't have a breach of contract claim involved in them. They involve a freelancer that maybe has no contractual relationship. But I ask you, it seemed to me that where there is a contract claim and a copyright claim, a district court would... The two district judges here made a sound judgment to say, okay, I've got a close copyright claim. It really could go either way, and I promise you I can construct strong arguments either way. But we have a contractual relationship between the two parties. And that ought to be front and center, and that ought to be what the case is basically about. Because I'm really concerned about having breach of contract claims morph into copyright infringement and morph into torts and everything. We go away from the law of contract, which is basic to me. But wasn't that a sound judgment? Your Honor, I don't think the U.S. copyright case has anything to do with the breach case. The breach occurred in English. I mean, sorry, in England. It certainly occurred in English as well. But the breach occurred in England, the alleged breach. There was no breach. The English courts... It says violates what they claim is their copyright in their source code and its structure. Well, but I thought this case went off very specifically on the terms of whether... On the question of whether you were reverse engineering. And that was a breach of contract and a breach of the licensing agreement. But that's the issue that should never have been reached in the U.S. because they had every opportunity to try that case in the U.K. and chose not to. You mean the whole question of reverse engineering? Bar's claims that were tried or could have been tried. I understand that. Your Honor, the copyright case here is we developed a system that competes. They told us that the way that we copied them, and this is their complaint... What about Judge Duncan's point that the U.K. system and the American system are fundamentally different in their approach to patent and copyright law? Doesn't that matter? I don't think they are fundamentally different. Both countries are subject to the same conventions. They are different in terms of what they give protections to. There is not a similar provision of the U.S. law as the European... But that fundamental difference doesn't... That fundamentally trumps a determination with respect to copyright ability and copyright protection. It doesn't matter for purposes of the EU directive. And that doesn't exist here. But the question about comedy, Your Honor, is not whether the law is different, but whether the law as applied in England is so fundamentally different that it offends American public policy. And it doesn't. The fact that England has a more restrictive set of rules is not offensive to me. Well, it is a matter of public policy, and I'm not quite sure you can say categorically that it isn't offensive to the more expansive protections recognized by our copyright law. I'm just not sure you can make a categorical statement to that effect. My time has expired. Okay. Thank you. But I urge the Court to affirm the judgment. Oh, we know what you're both urging. Okay. Thank you, Your Honor. I read all the briefs with a great deal of interest. With the Court's permission and the balance of my time, I'd like to sort of pick up on the issues of preclusion and specifically, Judge Wilkinson, the question that you asked about preservation. There was a statement made by my colleague that there... Because when we first talked to you, we didn't talk to you much about preclusion, and I'm really interested in the preclusion issue, both from the standpoint of preclusion, but also from the standpoint of whether it was even preserved. And let me start there with the preservation, because I think that is the beginning place, with Your Honor's permission. First of all, there was a statement made that nothing indicated in the complaint that this was proceeding under U.S. law. In fact, it states on the face of the complaint, which was filed on January 19, 2010, just four months after the U.K. action was filed. It states on the face of the complaint, quote, So this action, as Judge Duncan, I think, correctly recognized, was filed with respect to WPL's violations of U.S. law. The U.S. case sought damages and injunctive relief based solely on WPL's sales in the U.S. Asserted claims only under U.S. law was decided entirely under U.S. law. What they agreed to, and this goes to the question of which copyright would be violated. Here's what the parties agreed to in the license agreement. It says, customer, that would be WPL, this is section two, intellectual property rights of the license agreement, quote, and all other applicable jurisdictions, including but not limited to export control laws. So it was made clear from the start, these two cases filed in retrospect, what seems to be almost simultaneously, that this is under U.S. law. And so the question becomes, was this issue of res judicata preserved? Here's what we know. What we know is this. The U.K. high court on January 13th, 2013, issued its final decision. So if res judicata is going to be raised, now's the time to raise it. The district court, when it got to summary judgment in September of 2014, ruled that defendants have only contended, has only contended, that U.K. judgment should have issue preclusive and has not raised the defense of res judicata. That was September 29th of 2014. Here's what happened in the intervening time, and it's critical that your honors understand this. In May of 2013, in other words, approximately four months after the U.K. court issued that final judgment, SAS made a motion in the U.S. case to add the fraud claim. Now, if the issue of res judicata were to be raised, that would be the perfect time to raise it and say what they're saying now, which is, oh, the U.K. decision is res judicata as to the fraud claim. They did not. They opposed that motion to amend, but as you'll see in the record, if your honors consult Judge Gates's ruling on the motion to amend, they did not raise the issue of res judicata. Later, when Judge Flanagan issued this opinion in September of 2014, there was an opportunity, when they went back on reconsideration, as they did with respect to certain issues on the contract interpretation, to say, Judge Flanagan, you got that wrong, too. They didn't do that. In addition to that, as late as July 2016, ten months after the verdict, WPL was still only asserting collateral estoppel and not res judicata. In its motion to stay execution, that's J.A. 13757. So this issue of res judicata was first raised in this court. And that's not the way it works, because as this court has held, this is something that needs to be timely raised in the district court. In the Vandrella case, this court held that it was incorrect to allow even a 16-month gap. Later, from January of 2013, when the U.K. court issued its final decision, until it was raised in this court in 2017, so a period of four years, they were silent with respect to res judicata. Let me ask you this. Let's suppose we think, and I'm just saying this arguendo, okay? That this was a preservation issue and that they sufficiently preserved it, either because of the relationship between issue preclusion and claim preclusion or whatever. But just arguendo, is your view on the claim preclusion issue that there is no claim preclusion? I can see two routes to reaching that, and I want to know which one you prefer. One route is to say that they involve simply different factual underpinnings, that this case involves a different territorial, a different territory of WPL's sales in the United States. The earlier case did not involve that. A second route is the route that my fine colleague has suggested, which is that there are fundamental differences between the protections accorded by EU law to copyright and patent holders and the protections accorded by American law. Which of those routes do you, are you arguing, defeats their claim of claim preclusion? Perhaps not unexpectedly, Your Honor, both. But I think the discussion of the differences in what was being done in the U.K. and what was being done in the U.S. have been treated. So the legal issue, which is I think the second prong, is one that really hasn't been discussed here to the same degree, and if I might just finish by... So Judge Flanagan, in her ruling, rejecting this argument in essence, this is the summary judgment ruling, J.A. 1333. She looked to the North Carolina Supreme Court's case, a case called Boudreau v. Bauman, which sets out what the North Carolina test is for determining this weighing of public policy. And the North Carolina test for the weighing of public policy is precisely backwards from what my colleague stated. In other words, what we would look at is not the fundamentalness of the European public policy, but the fundamentalness of how North Carolina would view that. And what North Carolina has a very restrictive test, as stated in the Boudreau case, which is that in order to overcome the party's choice of law here in North Carolina, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the, in this case, European Union. And clearly the enforcement of North Carolina law of contracts with respect to this would not fit that category. And that was the contractual provision that was going to be resolved under North Carolina law. And, you know, and I do understand that because courts' notions of public policy and everything are not normally, don't override contractual terms. But, you know, the district court, both of them approached this as a contracts case. The contracts case had elements of copyright violations in it. The contract did. And the contract addressed claims. I think the contract carries you a good bit along in your argument on the claim preclusion. But this basic decision to look at it as a breach of contract case, it made some sense to me. But at any rate, I'm going to ask my colleagues if they have any further questions at all. Pardon? Okay. Did you reserve some time, sir? I don't see it here on the, if you reserve some time, the normal way to do it is with the clerk's office. I did that this morning. Okay. Is there anything further that you really need to say? Because if I granted you that time, it would be more than his office sheet. Your Honor, if I could address one point and one point only. Okay. All right. We'll let you do that. What you just suggested is that the two cases were different because one addressed sales in the U.S. and one addressed sales in the U.K. With respect to the contract claim, the only reason that sales would matter is whether, if there was a breach. Because then those sales would be figured in what the damages would be. With respect to sales in the U.S., with respect to the copyright claim, that would matter. But with respect to the contract claim, you've got to get to a breach before you get to any damages for lost sales. All right.
judges: J. Harvie Wilkinson III, Allyson K. Duncan, Stephanie D. Thacker